**SOMERSET HOUSE, INC.,**
**Plaintiff–Appellee,**
**Cross–Appellant,**

v.

**Bernard J. TURNOCK, as Director of the Illinois Department of Public Health, and John R. Lumpkin, as Associate Director of the Illinois Department of Public Health, Defendants–Appellants, Cross–Appellees,**

**and**

**Susan S. Suter, as Director of the Illinois Department of Public Aid, Defendant, Cross–Appellee.**

**Nos. 89–1854, 89–1956.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 24, 1990.

Decided April 16, 1990.

Jeanne M. Sylvester, Robert K. Neiman, Howard M. Hoffmann, Holleb & Coff, Chicago, Ill., for plaintiff-appellee, cross-appellant.

Valerie J. Peiler, Edward T. McAuliff, Sean Mulroney, Deputy Attys. Gen., Jill Deutsch, James C. O'Connell, Asst. Attys. Gen., Office of the Atty. Gen., Welfare Litigation Div., Chicago, Ill., for defendants-appellants, cross-appellees.

Before FLAUM and EASTERBROOK, Circuit Judges, and GRANT, Senior District Judge.[*]

FLAUM, Circuit Judge.

Plaintiff Somerset House, a nursing home located in Chicago, Illinois, brought this § 1983 action to enjoin Turnock and Lumpkin, the Director and Associate Director of the Illinois Department of Public Health (the "Department"), respectively, and Suter, the Director of the Department of Public Aid (the "IDPA"), from implementing statutory remedies created by the Nursing Home Care Reform Act, ILL.REV. STAT. ch. 111½, ¶ 4151–101, et seq. (1988) (the "Act"), on the basis that the actions deprived Somerset of property without due process of law. The district court entered a preliminary injunction, enjoining Turnock and Lumpkin from implementing two of the proposed sanctions prior to a hearing: the imposition of a conditional license on the facility and the placement of the facility on a Quarterly List of Violators. The district court, however, refused to preliminarily enjoin Suter from imposing a third proposed sanction: the withholding of supplementary patient care funds. Turnock and Lumpkin now appeal from the preliminary injunction with respect to the license and the placement on the list of violators and Somerset House cross-appeals from the denial of the preliminary injunction with respect to the withholding of supplementary funds.

## I.

On August 9, 1988, Turnock and Lumpkin, through their authority under the Act, ordered an investigation of an alleged suicide at Somerset House. At the conclusion of the investigation, the surveyor completed an "exit report" setting out her findings and provided a copy of that report to Somerset, as required by § 3–212(c) of the Act. Pursuant to § 3–702(d), the surveyor also provided Somerset with an "exit conference" and Somerset was free to give a written response to the charges within ten days of receipt of the copy of the report under § 3–212(c). The Department concluded from the investigation that Somerset had committed a Type "A" violation of the Act, which is a violation resulting in serious harm or death.

The Department then issued a Notice of Type "A" Violation, a Conditional License, a Notice of Fine Assessment and an Imposed Plan of Correction and also placed Somerset on the Quarterly List of Violators. The Notice itself carried no sanctions. The Fine and the Imposed Plan of Correction were what they appeared to be: a fine and a plan to correct the problems that caused the violations. The Conditional License, which was in place from November 1, 1988, through April 30, 1989, had several effects. It could be revoked if Somerset were to fail to complete the Plan of Correction. In addition, because the Conditional License had to be posted in a conspicuous place, it could have damaged Somerset's reputation. The Conditional License also caused the IDPA to automatically withdraw funding under the Quality Incentive Program ("QUIP"), ILL.ADMIN.CODE tit. 89 § 140.565, et seq. (1985), from the date of the license to the end of the six-month

* The Honorable Robert A. Grant, Senior District Judge of the United States District Court for the Northern District of Indiana, is sitting by designation.

QUIP–funding cycle in which the Conditional License expires. The Quarterly List of Violators is a publically distributed list of facilities violating the Act designed to inform patients and their doctors which nursing homes were not in compliance with state standards.

Somerset was informed of its right to request a hearing to challenge the sanctions. Under the Act, a request for a hearing does not stay the imposition of the sanctions except the fine assessment, nor does it stay the withholding of QUIP funds. Somerset requested an administrative hearing, but no action has been taken on the request.

Somerset then filed this § 1983 suit against Turnock, Lumpkin and Suter complaining of a deprivation of property in violation of the due process clause of the fourteenth amendment. It asked for preliminary and permanent injunctive relief to enjoin the imposition of the sanctions prior to a hearing. The district court granted Somerset a temporary restraining order. After the issuance of the TRO, the Department imposed another set of identical sanctions against Somerset resulting from the investigation of another suicide. Somerset then filed an emergency motion for a second TRO, which was granted by the district court. By this time, Somerset had agreed to comply with the Imposed Plan of Correction and withdrew its request for an injunction with respect to the Plan.

The district court then entered the order which is before us on appeal. The court found that Somerset established a likelihood of success on the merits with respect to the issuance of a Conditional License and the placement on the Quarterly List of Violators. To support this holding, the court held that Somerset had a constitutionally protected property interest in its unconditional license because the conditional license caused reputational damage and resulted in a change in legal status, namely, the inehgibility for QUIP funding. In addition, the court found no exigent circumstances to warrant prompt action by the Department, that the administrative remedy was inadequate, and that Somerset had demonstrated irreparable harm. The court concluded that the harm to Somerset outweighed the public's interest in imposing the sanctions prior to a hearing, and the Department, therefore, was preliminary enjoined from issuing the conditional license.

With respect to the fine, the court found no likelihood that Somerset would prevail on the merits because the Department provides an administrative hearing prior to imposition of the fine. The court also refused to enjoin the withholding of QUIP funds because it found that such a temporary loss of funds did not constitute irreparable harm. The withholding of QUIP funds, however, was based on the imposition of the conditional license, so it is unclear whether the preliminary injunction actually reinstated the QUIP funds. The district court did not prevent Turnock and Lumpkin from taking other actions which would result in the withholding of QUIP funds, and Somerset appeals the denial of this portion of the requested injunction. Turnock and Lumpkin appeal the imposition of a preliminary injunction.

## II.

■ Our standard of review for the issuance of a preliminary injunction varies with the assorted functions performed by the district court. For factual determinations and weighing and balancing of the equities of the case, we review the district court for abuse of discretion. *Darryl H. v. Coler*, 801 F.2d 893, 897 (7th Cir.1986). *See also Lawson Products, Inc. v. Avnet, Inc.*, 782 F.2d 1429, 1437 (7th Cir.1986) ("The district judge's weighing and balancing of the equities should be disturbed on appeal only in the rarest of cases."). However, we review conclusions of law decided during the application of these factors *de novo*. *Thornton v. Barnes*, 890 F.2d 1380, 1385 (7th Cir.1989).

The district court properly recounted the elements of a preliminary injunction: the plaintiff must show that

1) no adequate remedy at law exists;
2) the moving party will suffer irreparable harm absent injunctive relief;

3) the irreparable harm suffered absent injunctive relief outweighs the irreparable harm the respondent will suffer if the injunction is granted;

4) the moving party has a reasonable likelihood of prevailing on the merits; and

5) the injunction will not harm the public interest.

*See Baja Contractors, Inc. v. City of Chicago*, 830 F.2d 667, 675 (7th Cir.1987), *cert. denied*, 485 U.S. 993, 108 S.Ct. 1301, 99 L.Ed.2d 511 (1988). The plaintiff must satisfy each of these elements to prevail. *Roland Machinery Co. v. Dresser Industries*, 749 F.2d 380, 386–87 (7th Cir.1984). In particular, the moving party must show some likelihood of success. "Equity jurisdiction exists only to remedy legal wrongs; without some showing of a probable right there is no basis for invoking it." *Id.* The standard is not high: the plaintiff need only show that their "chances are better than negligible." *Ping v. National Educ. Assoc.*, 870 F.2d 1369 (7th Cir.1989) (citations omitted). In this case, with respect to the Conditional License and the placement on the Quarterly List of Violators, we believe that, as a matter of law, Somerset has no likelihood of prevailing and, as a result, a preliminary injunction was not appropriate.

Somerset's legal claim is based on the requirement of the due process clause of the fourteenth amendment that a person be given notice and an opportunity to be heard at a meaningful time and in a meaningful manner before being deprived of a significant protected property interest. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). We have described procedural due process as a duty owed, comprised of "timely and adequate notice of impending deprivation and a reasonable opportunity for a hearing ..." *Hudson v. Chicago Teachers Union Local No. 1*, 743 F.2d 1187, 1192–93 (7th Cir.1984), *aff'd* 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986).

■ The district court found that Somerset had a significant protected property interest through a "stigma plus" analysis.

Under this analysis, an injury to reputation along with a change in legal status constitutes the deprivation of a property right. *See Goulding v. Feinglass*, 811 F.2d 1099, 1102 (7th Cir.), *cert. denied*, 482 U.S. 929, 107 S.Ct. 3215, 96 L.Ed.2d 701 (1987). The court found that the imposition of the Conditional License alone caused only damage to reputation which would not rise to constitutional levels, *see Paul v. Davis*, 420 U.S. 515, 95 S.Ct. 1155, 1166, 43 L.Ed.2d 363 (1976), but the combination of the Conditional License with the loss of eligibility for QUIP funding was sufficient because the loss of eligibility for funding was a change in legal status. The defendants do not challenge that Somerset had a property interest and, consequently, we do not review this determination.

■ The defendants challenge the district court's finding that the procedures employed were not sufficient to protect Somerset's property interest under *Loudermill*. What process is required depends on the right affected. Generally, a pre-deprivation hearing is required, but the formality and procedural requisites for a hearing can vary, depending on the importance of the interests involved and the nature of the subsequent proceedings. *Boddie v. Connecticut*, 401 U.S. 371, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971). These include the importance of the private interest, the length of finality of the deprivation, the likelihood of governmental error and the magnitude of the governmental interests involved. *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976); *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 102 S.Ct. 1148, 1157, 71 L.Ed.2d 265 (1982).

The district court held that a post-deprivation hearing was not sufficient in this case. It based its holding primarily on *Federal Deposit Insurance Co. v. Mallen*, 486 U.S. 230, 108 S.Ct. 1780, 100 L.Ed.2d 265 (1988) and *Barry v. Barchi*, 443 U.S. 55, 99 S.Ct. 2642, 61 L.Ed.2d 365 (1979). In *Mallen*, the Supreme Court held that the FDIC could suspend from office an indicted official of a federally insured bank without a pre-suspension hearing. The Court held that "[a]n important government interest,

accompanied by a substantial assurance that the deprivation is not baseless or unwarranted, may in limited cases demanding prompt action justify postponing the opportunity to be heard until after the initial deprivation." *Mallen,* 108 S.Ct. at 1787. In *Barry,* the Supreme Court considered the summary suspension of a New York harness trainer suspected of racing a drugged horse. The Court held that the interest in the integrity of harness racing accompanied by a post-race urinalysis justified a pre-hearing suspension, but that the failure to provide a sufficiently prompt post-suspension hearing rendered the action unconstitutional. *Barry,* 99 S.Ct. at 2650. Applying these holdings, the district court found that, while the governmental interest here was substantial, there was no guarantee that the deprivation was baseless, in violation of *Mallen,* and there was no prompt post-suspension hearing, in violation of *Barry.* Therefore, the district court held that there was a substantial likelihood of prevailing on the merits.

■ We respectfully disagree. The inquiry undertaken by the district court of whether a post-deprivation hearing is sufficient, via *Mallen* and *Barry,* is not the appropriate inquiry because a pre-deprivation opportunity to contest the penalty was provided in this case. Somerset was provided with a copy of the surveyor's report pursuant to § 3–212(c) of the Act, and an exit conference pursuant to § 3–702(d) of the Act. Somerset could have replied both orally at the exit conference and in written form within ten days of receipt of the copy of the report via § 3–212(c). The question before us, then, is not whether a pre-deprivation hearing to contest the penalty was required; rather it is whether the prehearing procedures were sufficient.

While the notice of the report and the exit conference were not a formal administrative hearing, the Supreme Court has held that "in general, 'something less' than a full evidentiary hearing is sufficient prior

to adverse administrative action." *Loudermill,* 105 S.Ct. at 1495 (quoting *Mathews,* 96 S.Ct. at 907). "The essential requirements of due process ... are notice and an opportunity to respond." *Id.* It is undisputed that notice and an opportunity to respond were provided here. Indeed, other than the ten day time limit for responding, no statutory limits were placed on Somerset's written response. Somerset could conceivably have presented additional evidence as well as legal or factual arguments.

Somerset, therefore, is left with the argument that a more formal hearing than was provided was required prior to the deprivation.[1] The test formulated in *Mathews* and *Zimmerman Brush* determines what type of hearing is necessary. *Mathews* holds that three distinct factors must be considered:

> First, the private interest that will be affected by the official action, second, the risk of an erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

96 S.Ct. at 903. *Zimmerman Brush* adds a fourth factor: the length or finality of the deprivation. 102 S.Ct. at 1157. Application of these factors has generally led the Supreme Court to conclude that an informal hearing, supplying notice and an opportunity to respond, is all that is required. In only one case, *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), has the Supreme Court required a formal predeprivation hearing. In the twenty years since *Goldberg,* the Court has indicated a strong reluctance to formalize the administrative process with such requirements. *See, e.g., Mathews,* 96 S.Ct. at

---

1. Somerset could make the argument that the informal procedures guaranteed by the Act were not meaningful. It could, for example, attempt to prove that it was not given a chance to reply to the charges during the exit conference, or

that written responses are never considered. It has not made this argument and there is no evidence in the record to this effect. (It may wish to make this argument during trial if it wants to prevail in this case.)

909; *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 740, 42 L.Ed.2d 725 (1975); *Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 1648–49, 40 L.Ed.2d 15 (1974); *Loudermill,* 105 S.Ct. at 1495. In *Mathews,* the plaintiff was faced with the cutoff of his disability benefits, which was potentially a large portion of his personal income. And in *Loudermill,* the plaintiff was faced with loss of his job, with the accompanying loss of income and sense of personal worth. Yet in neither *Loudermill* nor *Mathews* was a full evidentiary hearing required.

Faced with these precedents, Somerset makes only one substantial argument. Somerset contends that the sanctions sought by the defendants are punitive not remedial. It contends that the Imposed Plan of Correction is the only state action that actually protects nursing home residents, and the Imposed Plan of Correction is not before us. The state, it maintains, has a lower interest in imposing merely punitive sanctions prior to a full hearing than it would if the actions were remedial, and therefore, the notice and opportunity to respond were not sufficient to meet the *Mathews* test. In addition, Somerset argues that the risk of error is especially important where reputation is at stake: if the government is erroneous, it will have sullied the nursing home's name to no end and imposed an irreparable, punitive sanction on Somerset.[2]

Our application of the *Mathews* test, however, leads to a different result than that suggested by Somerset. While Somerset is correct that the sanctions hurt their interests, their sole purpose is not punitive. The action here is designed to protect the safety of nursing home residents. The imposition of the Conditional License serves two governmental purposes: it allows the

state to enforce the Imposed Plan of Correction; and it puts the public on notice that a violation has occurred in the nursing home. The placement on the Quarterly List of Violators also informs potential patients and their doctors that certain homes do not meet state standards. These goals are remedial. The fine is certainly punitive, but it will be collected only after a full hearing, so there is no due process violation. We believe that the state had a substantial, non-punitive interest in imposing the sanctions.

■ Even if the actions were purely punitive, full-scale hearings are not required by the due process clause prior to deprivation. For example, in *Goss,* 95 S.Ct. at 740, the Court held that a conversation was all that was required prior to suspending students for misbehavior. Suspensions are purely punitive, but no formal hearings were required before imposing the sanction because the state interest in punitive actions was sufficient to justify deprivation after an informal discussion. Yet the state interest in the case at bar is arguably stronger than that in *Goss.* The state interest in *Goss* concerned maintaining decorum at school. Here, the state is concerned with preventing violations of the Act that result in death or serious injury to nursing home residents. This interest should not be understated.

Moreover, the other factors in the *Mathews* test do not tilt the balance in Somerset's favor. As indicated above, it must be an unusual case to require more than informal notice and an opportunity to respond. Here, Somerset will suffer some monetary loss (because interest is not available after success at the hearing) and loss of reputa-

---

2. Somerset also points to our decision in *Bethune Plaza, Inc. v. Lumpkin,* 863 F.2d 525, 528–29 (7th Cir.1988). It claims that in *Bethune* we considered the very issues before us in this case. *Bethune,* however, did not raise due process questions on appeal. The relevant passages of *Bethune* concern whether issues concerning the Act, as state law, could be adjudicated by a federal court under *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), not the underlying legal question. If fact, the district court in *Bethune,* which did consider the issue

before us, enjoined Lumpkin from imposing prehearing sanctions against a nursing home, but did so under an earlier version of the Nursing Home Act which did not provide the nursing home with an opportunity to respond. The district court held on a motion to reconsider that the current provisions which are under review here "are in accordance with the due process requirements as recognized by the Supreme Court." 1987 WL 15403, 1987 U.S. Dist. Lexis 7310, p. 4. *Bethune* is, therefore, consistent with our holding.

tion. Somerset's interest is not negligible but it is also not overriding. The existing procedures are designed to minimize error by requiring an on-site investigation after a complaint has been filed against the home and by allowing the home to respond to any allegations or findings made by the investigator. Moreover, the cost of additional procedures could be significant: Delay in notifying patients and their doctors that a particular home does not meet state standards could cause patients to go to a home where there is an intolerable risk of death or serious injury. Pre-deprivation notice and opportunity to respond are provided along with the opportunity to request a full administrative hearing. We conclude that these procedures are sufficient to provide due process with respect to the Conditional License and the placement on the Quarterly List of Violators.

■ With respect to the cross-appeal concerning the withholding of QUIP funds, we have consistently held that a temporary loss of funds is not an irreparable injury. *See, e.g., Roland Machinery Co.,* 749 F.2d at 386. In *Sampson v. Murray,* the Court held that "it seems clear that the temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury." 415 U.S. 61, 94 S.Ct. 937, 952–53, 39 L.Ed.2d 166 (1974). In *Roland,* we listed four situations where a temporary loss of funds could be irreparable: where damages would come too late to save the plaintiff's business; where the plaintiff may not be able to finance the suit; where the defendant is judgment proof; and where the nature of the loss makes damages dfficult to calculate. Somerset does not contend that any of these situations is present here. Instead, Somerset cites *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 2690, 49 L.Ed.2d 547 (1976) for the proposition that a temporary loss of money caused by a constitutional violation is irreparable. In *Elrod,* a plurality held that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Id.* We have, however, interpreted *Elrod* as limited to first amendment cases. *Flower Cab Co. v. Petitte,* 685 F.2d 192,

195 (7th Cir.1982). "In such cases the quantification of injury is difficult and damages are therefore not an adequate remedy." *Id.* Denial of a preliminary injunction with respect to the QUIP funding was appropriate and we affirm the district court in this respect. We do not reach the constitutional issue with respect to the QUIP funding.

## III.

For the reasons stated above, the decision of the district court is AFFIRMED in part and REVERSED in part.