**CENTURY FEDERAL SAVINGS BANK, Plaintiff,**

v.

**The UNITED STATES of America, The Office of Thrift Supervision, and its Director, Timothy Ryan, and his successor in office, Defendants.**

**No. 90 C 3949.**

United States District Court,
N.D. Illinois, E.D.

July 24, 1990.

Bruce T. Logan, George J. Anos, Yolanda Kielar, Ash, Anos, Freedman & Logan, Chicago, Ill., for Century Federal Sav. Bank.

Harris Weinstein, Thomas J. Segal, Aaron B. Kahn, Edward J. O'Meara, Office of the Chief Counsel, Office of Thrift Supervision, Washington, D.C., for Director of the Office of Thrift Supervision.

Stuart M. Gerson, Asst. Atty. Gen., Fred L. Foreman, U.S. Atty., Linda A. Wawzenski, Asst. U.S. Atty., Theodore C. Hirt, John R. Tyler, Dept. of Justice, Civil Div., Washington, D.C., for U.S.

## MEMORANDUM OPINION AND ORDER

CONLON, District Judge.

This action is a product of the savings and loan crisis. Plaintiff Century Federal Savings Bank ("Century") claims that new minimum capital requirements promulgated by defendant Office of Thrift Supervision ("OTS") authorize defendant Timothy Ryan, as OTS Director ("the OTS director") to place Century in receivership. On July 12, 1990, Century filed a complaint seeking injunctive relief. Century immediately moved for a temporary restraining order and a preliminary injunction to protect Century from receivership until the court reaches a final decision on the merits.

### I. Background

#### A. Enactment of FIRREA

On August 9, 1989, Congress enacted the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub.L. No. 101–73, 103 Stat. 183 ("FIRREA"). In passing FIRREA, Congress modified the regulatory framework of the thrift industry. Congress abolished the Federal Home Loan Bank Board ("the Bank Board") and the Federal Savings and Loan Insurance Corporation ("FSLIC"), FIRREA § 401, 103 Stat. 354, and established OTS. FIRREA § 101, 103 Stat. 187. FIRREA authorizes the OTS director to promulgate

uniformly applicable capital standards for savings associations.

FIRREA § 301, 12 U.S.C. § 1464(t)(1)(A).

OTS promulgated new regulations prescribing minimum capital standards on November 7, 1989, and the regulations became effective on December 7, 1989. 12 C.F.R. § 567. The OTS director is authorized to appoint a conservator or receiver *ex parte* and without notice if, in his opinion, a savings and loan association fails to maintain the minimum capital level. 12 U.S.C. §§ 1464(d)(2)(A) and (E).

#### B. Formation of Century

Century was formed in August 1984, when the Bank Board transferred the assets of the insolvent Century Savings and Loan Association, a state chartered mutual savings and loan association, to Century. Century was established under a Federal Stock Charter granted by Bank Board Resolution No. 84–448 dated August 24, 1984 ("the resolution"). At the time Century was formed, liability from its predecessor's savings accounts exceeded the value of transferred assets. However, the Bank Board permitted thrift purchasers like Century to use, where appropriate, "purchase method" accounting under Generally Accepted Accounting Principles ("GAAP") to account for the acquisitions. The purchaser of an insolvent savings and loan association was permitted to record "goodwill" as an asset on the association's books, in the amount that the market value of the acquired institution's liabilities exceeded the market value of its assets.

The resolution permitted Century to amortize supervisory goodwill over a 35–year period using a straight-line method. The resolution stated,

RESOVLVED [sic] FURTHER, That for purposes of reporting to the Board, the use of push-down accounting is approved, and Century may amortize the value of any intangible asset resulting

from the accounting for the purchase over a period not to exceed 35 years by the straight-line method.

Complaint, Ex. A at 3. Under FIRREA, only limited "qualifying" amounts of goodwill may be included for purposes of computing the purchaser's capital. These amounts decrease and are phased out in five years. If FIRREA had been in place when Century was formed, Century would have been legally insolvent from its inception. OTS does not dispute that Century is a stable, conservatively managed institution. However, Century does not have sufficient capital to satisfy FIRREA minimum capital standards.

On July 3, 1990, a supervisory OTS team advised Century's board of directors that Century was insolvent due to regulations preventing consideration of the supervisory goodwill granted by the Bank Board. OTS informed Century that it must meet the increased capital requirements. In the alternative, OTS demanded that Century sign a consent agreement surrendering operating authority to OTS or face receivership and liquidation by the Resolution Trust Corporation.

Century maintains that the resolution and Century's charter agreement contractually obligated the United States to consider the full amount of supervisory goodwill as capital even under the new regulations. Century alleges that it will suffer irreparable harm if a receiver is appointed. Century requests the court to enjoin OTS from placing Century in receivership or issuing cease and desist orders based on Century's insufficient capital.

## II. Jurisdiction

■ Century asserts that this court has jurisdiction to enjoin the OTS director pursuant to 12 U.S.C. § 1464(d)(1)(A), which provides,

The Director shall have power to enforce this section, section 8 of the Federal Deposit Insurance Act [12 U.S.C.A. § 1818], and regulations prescribed hereunder. In enforcing any provision of this section, regulations prescribed under this section, or any other law or regula-

tion, or in any other action, suit, or proceeding to which the Director is a party or in which the Director is interested, and in the administration of conservatorships and receiverships, the Director may act in the Director's own name and through the Director's own attorneys. Except as otherwise provided, the Director shall be subject to suit (other than suits on claims for money damages) by any Federal savings association or director or officer thereof with respect to any matter under this section or any other applicable law, or regulation thereunder, in the United States district court for the judicial district in which the savings association's home office is located, or in the United States District Court for the District of Columbia,....

Two district courts have concluded that section 1464(d)(1)(A) provides jurisdiction for injunctive relief against the OTS director: *Flagship Federal Savings Bank v. Wall*, No. 90–0079–GT(BTM), slip op. at 4, (S.D.Cal. February 14, 1990); *Franklin Federal Savings Bank v. Director, Office of Thrift Supervision*, No. CIV–2–90–166, 1990 WL 123145 (E.D.Tenn. July 16, 1990). Section 1464(d)(1)(A) excludes suits for money damages, impliedly including actions for declaratory judgment or injunctive relief regarding enforcement of any provision of section 1464.

■ OTS asserts that section 1464(d)(1)(A) does not govern this dispute. OTS argues section 1464(d)(2)(G) expressly denies jurisdiction over this action. Section 1464(d)(2)(G) provides,

Except as otherwise provided in this subsection, no court may take any action for or toward the removal of any conservator or receiver or, except at the request of the Director, to restrain or affect the exercise of powers or functions of a conservator or receiver.

In *Saratoga Savings and Loan Association v. Timothy Ryan, Director of Office of Thrift Supervision*, No. 89–3305 (D.C. D.C. May 16, 1990), a district court dismissed a similar action on the basis of 1464(d)(2)(G). However, a literal reading of this subsection indicates that it applies only

*after* appointment of a conservator or receiver, since no actions "for or toward the removal of any conservator or receiver" are possible prior to appointment.

Immediately preceding subsection (G), section 1464(d)(2)(E), entitled "Power of appointment; judicial review," provides,

> The Director shall have exclusive power and jurisdiction to appoint a conservator or receiver for a Federal savings association. If, in the opinion of the Director, a ground for the appointment of a conservator or receiver for a savings association exists, the Director is authorized to appoint ex parte and without notice a conservator or receiver for the savings association. In the event of such appointment, the association may, within 30 days thereafter, bring an action in the United States district court for the judicial district in which the home office of such association is located, or in the United States District Court for the District of Columbia, for an order requiring the Director to remove such conservator or receiver, and the court shall *upon the merits dismiss such action or direct the director to remove such conservator or receiver.* Upon the commencement of such an action, the court having jurisdiction of any other action or proceeding authorized under this subsection to which the association is a party shall stay such action or proceeding during the pendency of the action for removal of the conservator or receiver.

(emphasis added). Subsection 1464(d)(2)(G) prohibits the court from removing a receiver except as provided in section 1464(d)(2)(E). Section 1464(d)(2)(E) permits an action filed within 30 days of an appointment, and requires the court to reach the merits before taking any action to remove a receiver. These subsections define the court's jurisdiction upon appointment of a receiver.

The jurisdictional grant in section 1464(d)(1)(A) permits the court to entertain an action other than an action for money damages prior to appointment of a receiver. Sections 1464(d)(2)(E) and (G) do not limit this jurisdictional grant, but they insure that a receiver may be removed only upon a decision on the merits. Congress may have determined that once a receiver was appointed, preliminary injunctive relief would have a deleterious effect upon a savings and loan association. After appointment, immediate, unobstructed action by the receiver may be essential to conserve the savings and loan association's assets and prevent panic. Prior to appointment, injunctive relief may prevent needless liquidation of viable savings and loan associations. Consistent with the plain language of these subsections, section 1464(d)(1)(A) confers jurisdiction to enjoin actions by the OTS director pursuant to section 1464.

■ OTS argues that section 1464(d)(1)(A) cannot confer jurisdiction over this action because the United States Court of Claims has exclusive jurisdiction over contract actions against the United States. OTS correctly observes that generally the Tucker Act, 28 U.S.C. § 1346(a)(2), 1491, authorizes the Court of Claims to hear express or implied contract actions against the United States. However, the Court of Claims' jurisdiction is exclusive only to the extent that Congress has not granted any other court jurisdiction to hear those claims. *Bowen v. Massachusetts,* 487 U.S. 879, 910 n. 48, 108 S.Ct. 2722, 2740 n. 48, 101 L.Ed.2d 749 (1988). Section 1464(d)(1)(A) is an express grant of jurisdiction to district courts over actions against the OTS director. Accordingly, this court may decide Century's motion for injunctive relief.

## III. Motion For Injunction

Since the relevant facts are uncontested, Century's motion will be treated as a motion for a preliminary injunction rather than a motion for a temporary restraining order. In order to obtain injunctive relief, Century must demonstrate that (1) no adequate remedy at law exists; (2) Century will suffer irreparable harm absent injunctive relief; (3) Century's irreparable harm outweighs the harm OTS will suffer if an injunction is granted; (4) Century has a reasonable likelihood of prevailing on the

merits; and (5) the injunction will not harm the public interest. *Somerset House, Inc. v. Turnock*, 900 F.2d 1012, 1014–15 (7th Cir.1990).

### A. Likelihood Of Prevailing On The Merits

Century does not contest that it is undercapitalized under regulations promulgated since FIRREA was enacted. Century argues that the 1984 resolution contractually guaranteed Century's right to apply its supervisory goodwill against its liabilities. In the resolution, the Bank Board specified seven conditions Century must satisfy to convert from a state mutual to a federal stock institution. Complaint, Ex. A at 2–3. The seventh condition stated,

> That within 60 calendar days after the effective date of the supervisory conversion, Century shall file with the Principal Supervisory Agent of the Federal Home Loan Bank of Chicago an opinion from an independent certified public accountant that (a) specifically describes, as of the effective date of the supervisory conversion, any intangible assets, including goodwill, or discounts and premiums arising from the supervisory conversion to be recorded on the books of Century and (b) substantiates the reasonableness of amounts attributed to intangible assets, including goodwill, and the discounts and premiums and the related amortization periods and methods; . . . .

*Id.* In the resolution, the Bank Board approved 35–year straight-line depreciation of intangible assets, including goodwill. *Id.*

Straight-line depreciation of goodwill was permissible prior to Congress' enactment of FIRREA. FIRREA tightly restricts the use of goodwill as an intangible asset. The statute requires OTS to establish minimum capital standards, including (i) a leverage limit; (ii) a tangible capital requirement; and (iii) a risk-based capital requirement. 12 U.S.C. § 1464(t)(1)(A). Those standards are delineated at 12 C.F.R. § 567. FIRREA explicitly limits the amount of qualifying supervisory goodwill that a thrift may include as "core capital." 12 U.S.C. §§ 1464(t)(3)(A), 1464(t)(9)(A). The statute excludes all intangible assets from the definition of "tangible capital." 12 U.S.C. § 1464(t)(9)(C). The risk-based capital standard varies depending upon the amount of risk associated with particular assets. 12 C.F.R. §§ 567.2(a)(1), 567.6.

Congress determined that stronger capital requirements were necessary to prevent a recurrent crisis. H.R.Rep. No. 54(I) 101st Cong., 1st Sess., at 310 (1989) *reprinted in* 1989 U.S.Code Cong. & Admin. News at 86, 106 ("[I]f a crisis of this nature is to be prevented from happening again, thrifts must be adequately capitalized against losses."); H.R.Conf.Rep. No. 222, 101st Cong., 1st Sess., at 404, *reprinted in* 1989 U.S.Code Cong. & Admin.News at 443 ("[A]n adequate capital requirement will provide the self-restraint necessary to limit risk-taking by Federally insured savings associations."). Congress did not consider goodwill a reliable thrift asset. 135 Cong. Rec. H 2707–08 (daily ed. June 16, 1989) (statement of Rep. Michel); *id.* at H 2713 (Rep. Roth); *id.* at H 2710 (Rep. Price) ("goodwill is one of the remaining poisons of the savings and loan industry").

Century asserts that the Bank Board resolution and Century's charter constitute a contract with the United States. Century argues that in spite of the strong policy against using substantial supervisory goodwill to satisfy the capital requirements, the government is contractually obligated to permit Century to take the full amount of goodwill contemplated in the Bank Board resolution. If the court accepted Century's position, the full 35–year amortization life of Century's goodwill would be immunized from congressional regulation. For the purposes of this motion for preliminary injunction, the resolution and charter are assumed to constitute a contract with the United States.

■ Century argues that the savings clause in FIRREA Title IV, § 401(g), 103 Stat. 354, insulates the resolution from FIRREA's new capital requirements. In Title IV, entitled "Transfer of Functions, Personnel, and Property," Congress abolished the Bank Board and the FSLIC. Section 401(g) is inapplicable because the new

minimum capital standards were authorized in Title III, containing its own savings clause, section 302, 103 Stat. 343 (entitled "Savings Provisions"). Section 302 preserves forbearances granted under section 404 of the Competitive Equality Banking Act ("CEBA") of 1987, Pub.L. No. 100–86, 101 Stat. 554, 609–13 (codified at 12 U.S.C. §§ 1467a and 1730i), and it is inapplicable to Century.

■■ Nevertheless, Century argues that the contract represented by the resolution and the charter bars Congress from legislating changes in Century's capital requirements. OTS contends that the Bank Board did not have the power to restrict Congress' regulatory power, citing *United States Trust v. New Jersey*, 431 U.S. 1, 24, n. 21–22, 97 S.Ct. 1505, 1518–19, n. 21–22, 52 L.Ed.2d 92 (1977) (a state government need not adhere to contracts surrendering an essential attribute of its sovereignty). However, the federal government may waive its police powers in some circumstances. In *Bowen v. Public Agencies Opposed to Social Security Entrapment*, 477 U.S. 41, 52, 106 S.Ct. 2390, 2396–97, 91 L.Ed.2d 35 (1986), the Supreme Court held,

> While the Federal Government, as sovereign, has the power to enter contracts that confer vested rights, and the concomitant duty to honor those rights, [citations omitted], we have declined in the context of commercial contracts to find that a "sovereign forever waives the right to exercise one of its sovereign powers unless it expressly reserves the right to exercise that power" in the contract. *Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130, 148 [102 S.Ct. 894, 907, 71 L.Ed.2d 21] (1982). Rather, we have emphasized that "[w]ithout regard to its source, sovereign power, even when unexercised, is an enduring presence that governs all contracts subject to the sovereign's jurisdiction and will remain intact *unless surrendered in unmistakable terms.*" *Ibid.* Therefore, contractual arrangements, including those to which a sovereign itself is party, "remain subject to subsequent legislation" by the "sovereign." *Id.* at 147 [102 S.Ct. at 907].

(emphasis added). In order for Century to prevail, the Bank Board had to expressly waive subsequent authority to alter Century's minimum capital requirements.

Two district courts have granted preliminary injunctions in cases where, by express agreement, the Bank Board restricted the government's regulatory power. In *Far West Federal Bank v. Director of Thrift Supervision*, 738 F.Supp. 1559, 1560 (D.Or. 1990), the Far West Federal Bank applied to the Bank Board to convert from a mutual savings association to a stock savings association. Investors agreed to invest $27 million in Far West. At the time of the conversion, Far West could not comply with the regulatory capital requirements in effect at the time. The conversion agreement approved the conversion and granted a forbearance from meeting regulatory requirements. The forbearance allowed Far West ten years to meet the regulatory capital standards. In a separate opinion, *Far West Federal Bank v. Director of Thrift Supervision*, 738 F.Supp. 1564, 1569–70 (D.Or.1990), the court concluded that the conversion agreement was a waiver and forbearance of regulatory powers, and waiver was sufficiently unmistakable to warrant finding some likelihood that Far West would prevail on the merits.

Similarly, in *Franklin Federal Savings Bank v. Director, Office of Thrift Supervision*, CIV–2–90–166, Slip Op. at 1–2, 1990 WL 123145 (E.D.Tenn. July 16, 1990), the acting Bank Board secretary wrote a letter dated November 21, 1988, authorizing the Franklin Federal Savings Bank to amortize supervisory goodwill over a period not to exceed 25 years by the straight-line method. In the letter, the Bank Board agrees,

> Other than the actions to enforce the regulatory requirements waived in accordance with paragraph 1 [authorizing amortization of good will] and the statutory provisions authorizing imposition of the waived requirement, insofar as such requirement is waived, the Board and FSLIC expressly reserve all their statutory rights and powers with respect to Franklin Federal Savings Bank including, without limitation, those under Sec-

tion 5 of the Home Owners' Loan Act of 1933 and Sections 406 and 407 of the National Housing Act.

*Id.* The court determined that the forbearance survived passage of FIRREA, and granted a preliminary injunction preventing OTS from enforcing the minimum capital requirements against Franklin Federal Savings.

In contrast with the agreements in *Far West* and *Franklin*, the resolution approving Century's charter did not contain a forbearance or waiver of existing regulations. The resolution permitted Century to amortize goodwill consistent with regulatory requirements under the then existing law. As a regulatory body, the Bank Board was merely enforcing statutory requirements. The Bank Board resolution does not contain any language approximating an "unmistakable" provision that Century would not be subject to subsequent congressional action. As a result, Century has no likelihood of succeeding on the merits.

Century asserts that Congress could not have intended as harsh a result as receivership if a converted savings and loan failed to meet the minimum capital requirements. In *El Paso Savings Assoc. v. Director, Office of Thrift Supervision*, EP–89–CA–426–H, Slip Op. at 2 (W.D.Tex. January 9, 1990), a district court denied injunctive relief to a savings and loan association contesting the exclusion of goodwill under FIRREA. The court observed,

A proposed amendment to [FIRREA], known as the Hyde Amendment, which would have "grandfathered" savings institutions such as the Plaintiff, was voted down in the House of Representatives. Furthermore, the debate in the House on the Hyde Amendment makes it clear that the members of that body understood and intended that following passage of the Act, so-called "supervisory goodwill" could no longer be counted by a thrift institution in meeting the newly imposed capital requirements. See 135 Cong.Rec. H2703–2718 [daily ed., June 16, 1989].

*Id.* The plain language of the statute requires the OTS director to establish minimum capital requirements that all savings and loan associations must obey.

■ Century asserts a property interest in the supervisory goodwill accrued when the conversion occurred, and Century argues the new minimum capital requirements constitute a taking by the government without compensation. Even if Century is correct,

Equitable relief is not available to enjoin an alleged taking of private property for public use, duly authorized by law, when a suit for compensation can be brought against the sovereign subsequent to the taking.

*Ruckelshaus v. Monsanto*, 467 U.S. 986, 1016, 104 S.Ct. 2862, 2880, 81 L.Ed.2d 815 (1984). Congress has not withdrawn the jurisdiction of the Court of Claims to hear Century's claim. *See, id.* at 987, 104 S.Ct. at 2864–65 (action to recover compensation for a taking is available in the Court of Claims under the Tucker Act unless Congress has expressly withdrawn jurisdiction). Century does not argue that regulating savings and loan associations is beyond the police power of Congress. The Supreme Court's holding in *Monsanto* clearly prohibits injunctive relief based on a taking by the government without compensation.

■ Century asserts that enforcement of the statute violates its constitutional right to equal protection of the law. OTS has acted to enforce a statute admittedly violated by Century. Century argues that the statute is arbitrary and irrational. The statute, enacted against the background of the savings and loan crisis, is a rational attempt to protect depositors, the thrift insurance fund and the nation's financial system by requiring savings and loan associations to increase tangible capital. Century's equal protection argument is baseless.

IV. Conclusion

Century's motion for preliminary injunction is denied. This case is set for a status hearing on August 14, 1990.