**FAR WEST FEDERAL BANK, S.B., et al., Plaintiffs,**

v.

**DIRECTOR, OFFICE OF THRIFT SUPERVISION, et al., Defendants.**

**Civ. No. 90–103–PA.**

United States District Court, D. Oregon.

Aug. 8, 1990.

Barnes H. Ellis, Christine Kitchel, Stoel, Rives, Boley, Jones & Grey, Portland, Or., Wesley G. Howell, Jr., John C. Millian, Gibson, Dunn & Crutcher, Washington, D.C., for plaintiffs.

Stuart M. Gerson, Asst. Atty. Gen., Leslie H. Southwick, Deputy Asst. Atty. Gen., Charles H. Turner, U.S. Atty., Herbert C. Sundby, Asst. U.S. Atty., Brook Hedge, Theodore C. Hirt, Jeffrey S. Gutman, Gary W. Herschman, Dept. of Justice, Civ. Div., Washington, D.C., for defendant F.D.I.C.

Eugene M. Katz, Acting Chief Counsel, Thomas J. Segal, Associate Chief Counsel, Aaron B. Kahn, Elizabeth R. Moore, Sr. Trial Attys., Office of the Chief Counsel, Office of Thrift Supervision, Washington, D.C., for defendant Director, Office of Thrift Supervision.

## OPINION

PANNER, Chief Judge.

Plaintiffs, Far West Federal Bank (Far West) and a number of its investors and shareholders (Investors), bring this action against the Director of the Office of Thrift Supervision (OTS), the Federal Home Loan Bank Board (FHLBB), the Federal Home Loan Bank of Seattle (FHLB–Seattle), the Federal Deposit Insurance Corporation (FDIC), and the Federal Savings and Loan Insurance Corporation (FSLIC). The central issues in this case are: 1) whether a 1987 agreement (Conversion Agreement) between Far West, the Investors, and predecessor agencies to OTS, was abrogated by the Financial Institutional Reform, Recovery and Enforcement Act of 1989 (FIRREA), Pub.L. No. 101–73, 103 Stat. 183 *et seq.* (1989); and 2) if not, whether Far West has complied with the Conversion Agreement. I do not repeat the facts set forth in my two prior opinions of May 4, 738 F.Supp. 1559, and June 8, 1990, 738 F.Supp. 1564. Additional facts are set forth below.

## PROCEDURAL HISTORY

On May 4, 1990, I issued a temporary restraining order, enjoining OTS from taking regulatory action against Far West inconsistent with the Conversion Agreement. On June 4, 1990 I held a preliminary injunction hearing, granted plaintiffs' motion for preliminary injunction with an opinion to follow, and scheduled the case for an August 14, 1990 trial on an expedited schedule.

I expedited this case based on counsel's representations that they wanted a quick resolution of the threshold legal issue presented in the preliminary injunction and OTS's representation that they would seek an expedited appeal. OTS filed its notice of appeal nearly five weeks later, on July 11, 1990. On June 8, 1990, I issued a written opinion granting plaintiffs' motion for preliminary injunction. A pending mo-

tion to dismiss all claims was scheduled for July 30, 1990.

On July 3, 1990, plaintiffs moved for leave to file an amended supplemental complaint, to delete one claim and add another, Count III, (the "Schedule P issue"). I granted that motion on July 6, 1990, and gave the parties 10 days to brief whether the Schedule P issue should be tried with the others on August 14.

Defendants OTS and FDIC[1] filed an additional "Motion to Dismiss Count III, or Postpone Trial on Count III, to Sever and Transfer Counts IV and V to the Court of Claims, or to Take Trial of Counts I and II Off Calendar". At a hearing on July 23, 1990, I orally denied all motions to dismiss, denied the motion to sever and transfer Counts IV and V, denied a motion to stay the action pending an appeal of my ruling on the severance and transfer motions, and ruled that all claims will be tried on August 14, with this opinion to follow.

## FACTUAL BACKGROUND

The Conversion Agreement contains a provision under which OTS's predecessor, (now OTS), can deem Far West out of compliance with the modified capital requirements established in Schedule P of the Conversion Agreement. That provision vests this determination in the "sole discretion" of OTS. Far West is required to send OTS periodic schedules of compliance with Schedule P.

On June 28, 1990, after adverse rulings on motions for a temporary restraining order and preliminary injunction, prior to filing a notice of appeal of those rulings, OTS sent Far West a Notice of Default on Schedule P of the Conversion Agreement. OTS based its determination of default on six accounting adjustments to Far West's schedule of compliance.

In the Notice of Default, OTS demanded that Far West cure the default within the three-month period established in the Conversion Agreement. The Conversion Agreement permits Far West to rebut

---

1. For simplicity, I refer to defendants as OTS hereafter, except where necessary to distinguish the defendants. Defendant FHLB–Seattle appears to agree with plaintiffs on the legal issue of abrogation.

OTS's determination of default, but also permits OTS, in its "sole discretion" to reject the rebuttal, deem Far West in continued default and take stringent regulatory action.

## AMENDED SUPPLEMENTAL COMPLAINT

In its Amended Supplemental Complaint, plaintiffs seek injunctive, declaratory, and compensatory relief on five claims: 1) FIRREA did not abrogate the Conversion Agreement; 2) a takings claim, for failure to abide by the Conversion Agreement; 3) the Schedule P claim, concerning whether Far West has complied with the Modified Capital Requirements established in Schedule P of the Conversion Agreement; 4) a rescission and restitution claim brought by the Investors, for failure of consideration under the Conversion Agreement; and 5) a due process claim for repudiation of the Conversion Agreement.

## MOTION TO DISMISS

OTS's motion to dismiss is based on several grounds. OTS moved to dismiss Counts I and II for failure to state a claim under Fed.R.Civ.P. 12(b). OTS contends that as a matter of law, the Conversion Agreement was abrogated by FIRREA. I rejected this argument in my prior opinions, and do not repeat my reasons here. I deny OTS's motion to dismiss Counts I and II for failure to state a claim.

OTS seeks to dismiss the remaining counts for lack of subject matter jurisdiction. OTS raises three relevant arguments not raised in my prior opinions: 1) the claims are barred by sovereign immunity; 2) exclusive jurisdiction is vested in the Court of Claims under the Tucker Act, 28 U.S.C. § 1491(a)(1), and the "Little Tucker Act", 28 U.S.C. § 1346(a)(2); and 3) the Schedule P claim is neither final agency action, nor ripe for judicial review, and even if it is, Far West has failed to exhaust its administrative remedies and waived judicial review of OTS's determination of default. I reject these arguments and deny OTS's motion to dismiss on these grounds.

Defendants also moved for a 60-day stay pending Federal Circuit review of my decision denying transfer of Counts IV and V to the United States Claims Court, under 28 U.S.C. § 1292(d)(4)(B). That statute relates to transfer of an "action", not to severance and transfer of a claim. There is not even arguable Tucker Act jurisdiction over Counts I, II, and III. Therefore, 28 U.S.C. § 1292(d)(4) does not require a stay.

Further, to grant a stay would be senseless from the perspective of judicial economy, the burden on the litigants, and the public interest in a speedy, final resolution. This action raises important national issues. It must be quickly resolved for the thrift industry, regulators, and most important, the public. Although the action is a serious one of great public importance, it is not complex. There are few material factual disputes. The legal issues, though difficult, are clear and without controlling precedent.

There is no doubt that neither my word, nor that of my fellow trial court judges dealing with similar cases, will be the last. There is no interest served in staying the action pending an appeal of a decision not to transfer two of five claims, when I have jurisdiction over the remainder of the claims, and those claims present threshold, possibly dispositive issues. I deny the motion for a stay.

## LEGAL STANDARD

On a motion to dismiss, the court must review the sufficiency of the complaint. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The court should construe the complaint most favorably to the pleader:

> In evaluating the sufficiency of the complaint, we follow, of course, the accepted rule that the complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

*Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). For

the purpose of the motion, the complaint is liberally construed in favor of the plaintiff and its allegations are taken as true. *Rosen v. Walter,* 719 F.2d 1422, 1424 (9th Cir.1983).

## APPLICABLE STATUTES

### I. FIRREA

FIRREA contains a "subject to suit" provision:

> Except as otherwise provided, the Director shall be subject to suit (other than suits on claims for money damages) by any Federal savings association or director or officer thereof with respect to any matter under this section or any other applicable law, or regulation thereunder, in the United States district court for the judicial district in which the savings association's home office is located. . . .

FIRREA § 301, HOLA § 5(d)(1)(A), 103 Stat. 289 (codified at 12 U.S.C.A. § 1464(d)(1)(A). In § 209, FIRREA provides that the FDIC may "sue and be sued, complain, or defend, in any court of law or equity, State or Federal." 103 Stat. 215 (codified at 12 U.S.C. § 1819(a)). Statutes in effect prior to FIRREA had analogous provisions relating to FDIC, FSLIC and the FHLBB, OTS's predecessor agency. *See,* 12 U.S.C. § 1819 (Fourth); 12 U.S.C. § 1725(c) (1988) (repealed by FIRREA); 12 U.S.C. § 1464(d)(1) (1982) (repealed by FIRREA).

### II. Court of Claims Jurisdiction

The Tucker Act establishes jurisdiction in the United States Claims Court over:

> any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). The "Little Tucker Act" establishes concurrent jurisdiction in Claims Court and the district court for Tucker Act claims not more than $10,000 in value, and exclusive jurisdiction in the Claims Court for Tucker Act claims exceed-ing $10,000 in value. 28 U.S.C. § 1346(a)(2).

## DISCUSSION

### I. Sovereign Immunity and Tucker Act Jurisdiction

■ Generally, contract actions against the United States fall within the jurisdiction of the Claims Court, under the Tucker Act. *Marcus Garvey Square v. Winston Burnett Const.,* 595 F.2d 1126, 1132 (9th Cir.1979). However, there is an exception to that rule when there is a waiver of sovereign immunity and a specific grant of alternative jurisdiction. *Munoz v. Small Business Administration,* 644 F.2d 1361, 1364 n. 3 (9th Cir.1981). I agree with the well-reasoned opinion of Chief Judge Thompson, in *Flagship Federal Savings Bank v. Wall,* Civil No. 90–0079–GT (S.D. Cal. Feb. 14, 1990). Judge Thompson found that FIRREA provides such a waiver and grant of jurisdiction.

■ The threshold issue is whether this action is one against the sovereign. The general rule is that if the judgment sought would interfere with the public administration, expend itself on the public treasury, restrain the government from acting or compel it to act, the action is one against the sovereign. *Land v. Dollar,* 330 U.S. 731, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947); *Larson v. Domestic & Foreign Corp.,* 337 U.S. 682, 704, 69 S.Ct. 1457, 1468, 93 L.Ed. 1628 (1949).

I conclude that this is an action against the sovereign. If plaintiffs receive a judgment of restitution, it would expend itself on the public treasury. If they receive permanent injunctive relief or declaratory relief, it would restrain the government from acting.

The inquiry turns to whether the sovereign has waived its immunity to this action. I find that it has. FIRREA provides that the OTS Director is subject to suits, other than actions for money damages, in the district court where the savings and loan association is headquartered. 12 U.S.C. § 1464(d)(1)(A). This is a specific waiver for actions seeking other than money dam-

ages. There are similar, though not so specific, waiver provisions related to defendant FDIC, FSLIC, and FHLBB. *See,* 12 U.S.C. 1819 (Fourth); 12 U.S.C. § 1725(c) (1988) (repealed by FIRREA); 12 U.S.C. § 1464(d)(1) (1982) (repealed by FIRREA).

The remaining question is whether the action is one for money damages within the meaning of 12 U.S.C. § 1464(d)(1)(A). I conclude that it is not. Plaintiffs seek restitution under Counts IV and V. They seek only injunctive and declaratory relief on Counts I, II and III, which relate to the abrogation issue. Merely because plaintiffs seek remedies measured in dollars does not mean that this is an action for money damages. Restitution is not the same as money damages conceptually, or necessarily quantitatively, though the amounts may ultimately be the same.

Counts IV and V are claims for restitution if FIRREA is held to abrogate the Conversion Agreement. These are claims for the government to disgorge itself of benefits it obtained from abrogation, if plaintiffs can show any, not to compensate plaintiffs for their damages. They are not based on allegations damages from a *breach* of contract by a contracting party, but rather restitution for the *abrogation* of the entire contract by congressional action.

Therefore, I conclude that this court has subject matter jurisdiction because there is a clear waiver of sovereign immunity and FIRREA provides a specific grant of alternative jurisdiction in this court.

I also look to the purpose of Tucker Act jurisdiction. The purpose of jurisdiction in the Claims Court for contract actions against the United States is to ensure uniform interpretation of federal government contracts, which would be unlikely if jurisdiction were spread among the states. *See, LaPlant v. United States,* 872 F.2d 881, 882 (9th Cir.1989) (citations omitted). That purpose is not frustrated by a district court interpreting a federal statute to determine whether it abrogated a contract.

II. Ripeness, Finality, Exhaustion and Waiver of Judicial Review

OTS argues that this action is not final agency action or ripe for review because it has not yet acted on Far West's rebuttal and the three month cure period has not yet run. It also contends that even if this action is final or ripe for review, Far West did not exhaust its administrative remedies, and its decision is not reviewable, because Far West waived the right to judicial review by agreeing to vest "sole discretion" to deem a default in OTS. I reject these arguments.

A. *Ripeness and Exhaustion of Administrative Remedies*

██ Far West contends that it may be excused from the well-established exhaustion requirement if it can show that pursuing administrative remedies will be futile. *Cafferello v. U.S. Civil Service Comm'n,* 625 F.2d 285, 287 (9th Cir.1980) (citation omitted). OTS does not reject this argument in principle. It merely contends that it does not apply because the issues are not fully developed for judicial review, Far West cannot show futility, and Far West will not suffer a hardship by withholding judicial review. I disagree.

First, the argument that the facts are not fully developed, or ripe for judicial review is not persuasive. To deem Far West in default, OTS must have investigated the facts on which the Notice of Default is based. The Notice of Default sets forth those bases in detail. Far West has already presented its rebuttal to the Notice of Default. There is simply no more factual development required to frame the action for judicial review.

Second, Far West has shown that pursuing the Schedule P issue through administrative processes is futile, and the outcome "preordained." Early in this action, though it was not then relevant and the Notice of Default was not yet sent, OTS took the position that Far West is out of compliance with Schedule P. It was not until well after receiving adverse rulings on important legal issues that OTS formally deemed Far West in default. Far West's compliance schedule was available to OTS even before those rulings. Further, despite its representations that it wanted a

quick appellate review and resolution of those legal issues, OTS waited more than one month after the last opinion to file a notice of appeal. OTS has *decided* that Far West is out of compliance with Schedule P. Further pursuit of this issue before OTS would be futile and wasteful.

Third, OTS contends that Far West will suffer no hardship as a result of the Notice of Default, because the only action it needs to take is to cure the default. This is a remarkable argument in light of the fact that OTS notified Far West that to cure the default, it must increase its capital by millions of dollars within three months, and if it does not, OTS may impose severe restrictions on Far West.[2]

It is not yet decided on the facts whether Far West has defaulted. However, it is clear that if it has not, requiring it to comply with OTS Notice of Default will impose a hardship because Far West will immediately have to modify its operations.

### B. *Waiver of Judicial Review*

OTS contends that because Far West agreed to give it "sole discretion" to determine whether it was in default under Schedule P, based on written findings, Far West waived any right to seek judicial review of that determination. The Conversion Agreement does not specifically discuss waiver of judicial review and contains no other provisions even arguably waiving judicial review of the Schedule P issue. At its worst, the "sole discretion" language is ambiguous and cannot be the basis for granting a motion to dismiss.

### CONCLUSION

I deny defendants' motions to dismiss Counts I through V of the Amended Supplemental Complaint.

---

**2.** At a pretrial conference on July 30, 1990, counsel for OTS said that OTS has now decided the cure period will run from the date Far West's rebuttal is rejected, if it is, rather than from the Notice of Default, as it had previously said. This does not alter the hardship. It merely shifts it to a time not yet known, to be set at the sole choice of OTS.