930 F.2d 883
 59 USLW 2605
 FAR WEST FEDERAL BANK, S.B.; Trinity Ventures, Ltd.; U.S.
Venture Partners III; U.S.V. Entrepreneur Partners;
Institutional Venture Partners III; Institutional
Management III; Charles River Partnership V; Dougery,
Jones and Wilder II; New Enterprise Associates IV, Limited
Partnership; Bain Capital Fund Limited Partnership;
Abingworth PLC; Trivest Venture Fund; Trivest Commonwealth
Fund; Porter Investments; Keller Enterprises, Inc.;
Banner Partners, Tetraven Fund S.A.; Second Ventures L.P.;
HSP Investment Co., N.V.; Louis A. Santiago, as Trustee;
Donald L. Tisdel; Gary D. Putnam; Richard D. Durrett, Jr.;
James E. Thomas; David L. McClung; Alfred J. Rawlinson;
Wayne Kuni; M. Lee Giustina; Claude L. Ganz; John H.
Geiger; Far West Federal Bank Employee Stock Ownership Plan
and Trust; and Joseph R. Gerber, Jr., Plaintiffs-Appellees,
v.
DIRECTOR, OFFICE OF THRIFT SUPERVISION, and Federal Deposit
Insurance Corporation, Defendants-Appellants,
and
Federal Home Loan Bank of Seattle, Defendant.
 No. 90-1465.
 United States Court of Appeals,
Federal Circuit.
 April 8, 1991.
Rehearing Denied Aug. 1, 1991.
 
 Wesley G. Howell, Jr., Gibson, Dunn & Crutcher, Washington, D.C., argued for plaintiffs-appellees. With him on the brief were John C. Millian and John F. Manning. Also on the brief were Barnes H. Ellis and Christine Kitchel, Stoel Rives Boley Jones & Gray, Portland, Or.
 Aaron B. Kahn, Sr. Trial Atty., Office of Chief Counsel, Office of Thrift Supervision, Washington, D.C., argued for defendants-appellants, Director OTS. With him on the brief were Harris Weinstein, Chief Counsel, Thomas J. Segal, Associate Chief Counsel, Elizabeth R. Moore and Edward J. O'Meara. Mark B. Stern, Dept. of Justice, of Washington, D.C., argued for defendants-appellants, Federal Deposit Ins. Corp. With him on the brief were Stuart M. Gerson, Asst. Atty. Gen. and Barbara C. Biddle. Also on the brief were Ann S. DuRoss, Asst. Gen. Counsel, Colleen B. Bombardier, Sr. Counsel and Jeannette E. Roach, Sr. Atty., Federal Deposit Ins. Corp., Washington, D.C.
 Before RICH, NEWMAN, and MICHEL, Circuit Judges.
 PAULINE NEWMAN, Circuit Judge.
 
 
 1
 This interlocutory appeal is taken on behalf of the Director of the Office of Thrift Supervision ("OTS") and the Federal Deposit Insurance Corporation ("FDIC"), and concerns the Financial Institutions Reform, Recovery and Enforcement Act ("FIRREA"), Pub.L. 101-73, 1989 U.S.Code Cong. & Admin.News (103 Stat.) 86 (codified at various sections of Titles 12 and 15).
 
 
 2
 In the course of litigation, the United States District Court for the District of Oregon denied the motion of the OTS and FDIC that Count IV of the complaint be severed and transferred to the United States Claims Court. Far West Federal Bank, S.B. v. Director, Office of Thrift Supervision, 744 F.Supp. 233 (D.Ore.1990). The Federal Circuit, on the government's motion for a stay pending appeal, granted a temporary stay of proceedings with respect to Count IV.[1] Far West Federal Bank, S.B. v. Director, Office of Thrift Supervision, No. 90-1465 (Fed.Cir. Aug. 13, 1990) (Order).
 
 
 3
 We lift the stay, and affirm the ruling of the district court.
 
 
 4
 * Background
 
 
 5
 The following premises are either uncontested or as alleged by Far West[2], and are accepted as true for the purposes of review of the only issue before us: whether the subject matter of Count IV should be severed and transferred to the Claims Court.
 
 A. Pre-FIRREA Events
 
 6
 In 1987 Far West Federal Bank, a federally-chartered savings association in Portland, Oregon, was essentially insolvent. Initiated and encouraged by the Federal Home Loan Bank Board ("FHLBB") and its deposit insurance arm the Federal Savings and Loan Insurance Corporation ("FSLIC"), recapitalization with $27 million in cash was obtained from a number of investors ("the investment group"). On December 31, 1987 a group of documents, letters and agreements (collectively the "Conversion Agreement") were entered into among Far West, the investment group, the FHLBB, and FHLBB's regional bank the Federal Home Loan Bank of Seattle ("FHLB-Seattle"). The contractual obligations of the FHLBB and FHLB-Seattle included forbearances of certain regulatory requirements.
 
 
 7
 In brief, the FHLBB and FHLB-Seattle agreed to permit Far West to operate for ten years pursuant to certain "Modified Regulatory Capital Requirements" as set out in the Conversion Agreement. The Conversion Agreement provided that these modified requirements would remain in effect "notwithstanding any subsequent changes in the definition of regulatory capital." FHLB-Seattle provided Far West with a line of credit to enable it to engage in a conservative, FHLBB-approved structured arbitrage strategy. Far West was also granted a waiver of the standard liability growth limitations, to enable full utilization of this credit line. The FHLBB and FHLB-Seattle agreed to certain amortization treatment of the credit line for regulatory capital purposes; this treatment in turn determined Far West's "loans to one borrower" limit. Far West states that these terms were essential to the economic viability of the recapitalization.
 
 
 8
 Far West states that it operated successfully under the Conversion Agreement, and that this recapitalization with private funds was saving the FSLIC insurance fund from liability estimated at $325 million dollars.
 
 B. FIRREA
 
 9
 FIRREA was enacted in August 1989. Among other purposes, the statute restructured the federal agencies responsible for regulating and insuring thrift institutions. The functions of the FHLBB were transferred to the newly-created OTS. The assets and liabilities of the FSLIC were placed in the FSLIC Resolution Fund which, with the new Savings Association Insurance Fund, were now administered by the FDIC. 12 U.S.C. Sec. 1437. Other changes, not here pertinent, were also made.
 
 
 10
 New rules were established for the thrift industry. A new regulatory capital structure was required of all thrift institutions, including new limitations on the inclusion of intangible assets (such as a credit line) in regulatory capital, and new "loans to one borrower" limits. 12 U.S.C. Sec. 1461. In general, the statutory requirements were more rigorous than those of the Conversion Agreement.
 
 
 11
 FIRREA, by its terms, preserved existing obligations between the FHLBB and thrift institutions:
 
 
 12
 (g) Savings provisions relating to FHLBB.--
 
 
 13
 (1) Existing rights, duties, and obligations not affected.--Subsection (a) [abolishing the FSLIC and FHLBB] shall not affect the validity of any right, duty, or obligation of the United States, the Federal Home Loan Bank Board, or any other person, which--
 
 
 14
 * * * * * *
 
 
 15
 (B) existed on the day before the date of the enactment of this Act [Aug. 9, 1989].
 
 
 16
 FIRREA, Pub.L. No. 101-73, Sec. 401(g), 103 Stat. at 356-57 (codified at 12 U.S.C. Sec. 1437 note). See also Sec. 401(f), 103 Stat. at 35 (preserving obligations of FSLIC).
 
 
 17
 In November 1989 OTS promulgated regulations requiring that FIRREA's regulatory capital and other restrictions would apply to all thrift institutions, regardless of past agreements with the FHLBB. See Regulatory Capital, 54 Fed.Reg. 46,845 (1989) (to be codified at 12 C.F.R. Parts 561, 563, 567). OTS Thrift Bulletin 38-2, issued January 9, 1990, states that FIRREA "eliminates ... previously granted capital and accounting forbearance."
 
 C. Far West's Suit
 
 18
 Regulatory actions by OTS, stated by Far West to be inconsistent with the terms of the Conversion Agreement, gave rise to the suit by Far West in the United States District Court for the District of Oregon. Far West's amended and supplemental complaint contained five counts. Counts I and II requested declaratory and injunctive relief from the FIRREA requirements, Count I on the basis that FIRREA did not supersede the Conversion Agreement, and Count II on the basis that the fifth amendment prohibits OTS from interfering with performance of the Conversion Agreement. Count III has been voluntarily dismissed. Count IV sought rescission of the Conversion Agreement and restitution of the funds invested, and Count V sought compensation for violation of Far West's fifth amendment due process rights.
 
 
 19
 Upon ensuing actions by OTS, ordering that Far West's operations be shut down for inability to meet the FIRREA capital requirements, the district court entered a preliminary injunction prohibiting OTS from imposing terms inconsistent with the Conversion Agreement. Far West Federal Bank, S.B. v. Director, Office of Thrift Supervision, 738 F.Supp. 1564 (D.Ore.1990).
 
 
 20
 On July 16, 1990 the government moved to sever and transfer Counts IV and V, and to stay proceedings in the district court pursuant to 28 U.S.C. Sec. 1292(d)(4)(B). The district court denied the motion. On August 10 Far West voluntarily agreed to transfer Count V to the Claims Court and, as reported supra, on August 13 the Federal Circuit ordered a stay of proceedings with respect to Count IV. Counts I and II were tried on August 14, and the merits were decided on September 14, 1990. Far West Federal Bank, S.B. v. Director, Office of Thrift Supervision, 746 F.Supp. 1042 (D.Ore.1990). Cross-appeals are reported to be pending before the Ninth Circuit.
 
 Count IV is as follows:
 
 21
 82. Plaintiffs incorporate paragraphs 1 through 81 by reference.
 
 
 22
 83. Application of the Modified Regulatory Capital Requirements and the specified accounting treatment of the credit facility are essential terms and conditions of the Conversion Agreement, and in particular of the Investors' agreement to recapitalize Far West. Should the Director of OTS and FDIC be correct that these contractual obligations were abrogated and superseded by enactment of FIRREA, that statute has effected a complete frustration of the Conversion Agreement, and a failure of the consideration for which the investment group bargained. In addition, FDIC will receive an unjustifiable windfall from the confiscation of the investment group's contributions. Accordingly, this Court should enter an equitable decree that the investment group is entitled to rescind the Conversion Agreement, and to receive from defendants restitution of the funds invested in Far West, together with the enhancement of the Bank's value that has occurred since the conversion, plus interest, expenses incurred, and such further relief as equity permits, unless FDIC makes a contribution to the capital of Far West in the amount necessary to bring Far West into compliance with the new FIRREA capital requirements.
 
 II
 The District Court's Jurisdiction
 
 23
 This case involves the related questions of waiver of governmental immunity from suit and grant of subject matter jurisdiction to the district court: questions that are often treated together, for both must be answered affirmatively to provide jurisdiction. We also consider any pertinent distinction between suits against the United States and suits against its agencies, to the extent that such distinction entails the effect on jurisdiction of the source of funds from which recovery can be had.
 
 
 24
 Determination of whether the district court has jurisdiction to consider the subject matter of Count IV depends on the relevant statutes authorizing suit against the government. It does not depend on whether the claim is ultimately determined to be meritorious. Bell v. Hood, 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946). It is pertinent that Count IV does not stand alone, but is a claim for relief alternative or supplemental to that of Counts I and II.
 
 
 25
 The government's position is that the FIRREA clauses that authorize suit in the district court against the FDIC and the OTS, the "sue and be sued" and the "subject to suit" clauses, do not waive immunity from suit in the district court when the factual issues derive from a contractual relationship. The government states that Count IV's claim for rescission and restitution is simply a disguised contractual claim for money damages, and thus jurisdiction over Count IV can be found only under the Tucker Act and exclusively in the Claims Court. See 28 U.S.C. Sec. 1491(a)(1). The government also states that the Administrative Procedure Act does not cure the inadequacy of the FIRREA suability clauses, as is suggested by Far West.
 
 
 26
 Far West points out that its count for rescission and restitution invokes classical equitable remedies, and that the issue arises from the same set of facts as do Counts I and II. The district court, declining to sever Count IV, held that "[m]erely because plaintiffs seek remedies measured in dollars does not mean that this is an action for money damages. Restitution is not the same as money damages conceptually, or necessarily quantitatively, though the amounts may ultimately be the same". Far West Federal Bank, S.B. v. Director, Office of Thrift Supervision, 744 F.Supp. 233, 238 (D.Ore.1990). The government responds that the Tucker Act impliedly forbids equitable relief on a contract claim against the United States.
 
 
 27
 We thus consider whether the jurisdictional authorizations of FIRREA encompass, in the suit before the district court, the subject matter and relief sought in Count IV.
 
 A. The "Sue and Be Sued" Clause
 
 28
 FIRREA carried forward the FDIC's "sue and be sued" clause:
 
 
 29
 The Federal Deposit Insurance Corporation shall have power--
 
 
 30
 Fourth. To sue and be sued, and complain and defend, in any court of law or equity, State or Federal.
 
 
 31
 12 U.S.C. Sec. 1819 Fourth.
 
 
 32
 The "sue and be sued" clause is the form of waiver of immunity from suit that is most often employed in statutes that authorize a government agency to engage in commercial or business-related activity. See Federal Housing Administration, Region No. 4 v. Burr, 309 U.S. 242, 245, 60 S.Ct. 488, 490, 84 L.Ed. 724 (1940) (referring to "the increasing tendency of Congress to waive the immunity where federal governmental corporations are concerned").
 
 
 33
 The FDIC's statutory authorization to sue and be sued in any state or federal court accommodates the commercial and business context in which this agency operates. The courts have applied this waiver broadly to the FDIC and the FSLIC, excluding only an area (not here pertinent) that is specifically excluded by the statute. In Woodbridge Plaza v. Bank of Irvine, 815 F.2d 538 (9th Cir.1987) the court described the "sue and be sued" clause as "a general waiver of sovereign immunity from claims brought against the FDIC." Id. at 542-43. In Morrison-Knudsen Co. v. CHG Int'l, Inc., 811 F.2d 1209 (9th Cir.1987) the court held that the FSLIC was not immune from certain creditors' claims, remarking that the "sue and be sued" clause waives an agency's sovereign immunity "unless Congress clearly directs otherwise." Id. at 1223. In North New York Savings Bank v. Federal Savings and Loan Insurance Corporation, 515 F.2d 1355 (D.C.Cir.1975) the court observed that the FSLIC is a corporate body that is required by Congress to have the power to sue and be sued and "is assumed to have accepted the ordinary incidents of suits in [the insurance] business"; the court declined to hold the FSLIC immune from the assessment of interest against it. Id. at 1364.
 
 
 34
 The large number of statutes that contain "sue and be sued" clauses reflects congressional intention that judicial remedy not be withheld when governmental agencies enter into transactions with the public. Judicial decisions illustrate the courts' concern for this legislative purpose. We discern no withdrawal from the Court's explanation in Burr, 309 U.S. at 245, 60 S.Ct. at 490, that
 
 
 35
 when Congress establishes such an agency, authorizes it to engage in commercial and business transactions with the public, and permits it to "sue and be sued," it cannot be lightly assumed that restrictions on that authority are to be implied.
 
 
 36
 See also, e.g., Franchise Tax Board v. United States Postal Service, 467 U.S. 512, 520, 104 S.Ct. 2549, 2554, 81 L.Ed.2d 446 (1984) (when Congress has enacted a suability statute, restraints should not be readily implied).
 
 
 37
 The government argues that Count IV sounds in contract, and that Congress in the Tucker Act showed its intention to exclude contract claims from "sue and be sued" clauses in other statutes. This position is contravened by the variety of contract-related claims for monetary relief which have been brought under "sue and be sued" clauses. E.g., Mann v. Pierce, 803 F.2d 1552, 1557 (11th Cir.1986) ("sue and be sued" clause waived HUD's immunity in district court suit on tenants' contract claims); Crowel v. Administrator of Veterans' Affairs, 699 F.2d 347, 351 n. 1 (7th Cir.1983) (immunity from claims for monetary damages for breach of contract waived by "sue and be sued" clause, to the extent that Congress has designated funds for the agency's use); Munoz v. Small Business Administration, 644 F.2d 1361, 1364, 1365 (9th Cir.1981) (Small Business Administration can be sued in district court for contract monetary damages greater that $10,000 under "sue and be sued" clause, citing legislative purpose to assist small business as weighing against requiring suit in the Court of Claims in Washington). In Munoz the court distinguished Marcus Garvey Square, Inc. v. Winston Burnett Construction Co., 595 F.2d 1126, 1131 (9th Cir.1979), a suit for money damages on a construction contract, wherein the court held that since there were no agency funds from which payment could be made, "the practical test" that judgment would be satisfied by the United States required suit in the Court of Claims. Munoz, 644 F.2d at 1365 n. 3. In Industrial Indemnity, Inc. v. Landrieu, 615 F.2d 644, 646, 647 (5th Cir.1980), the court held that a "sue and be sued" clause authorized suit in the district court against HUD by the contractor's assignees to recover payment for construction work on HUD-insured property. See also, e.g., Bor-Son Building Corp. v. Heller, 572 F.2d 174, 178, 181 (8th Cir.1978) ("sue and be sued" clause waived immunity from suit in claim for monetary relief based on quantum meruit, equitable lien, constructive trust, unjust enrichment, and joint venture); Mar v. Kleppe, 520 F.2d 867, 870 (10th Cir.1975) ("sue and be sued" clause waived immunity of Administrator of SBA in suit for money damages for breach of contract and quantum meruit ); White v. Bloomberg, 501 F.2d 1379, 1386 (4th Cir.1974) ("sue and be sued" clause authorized suit against Postal Service for post-judgment interest); Romeo v. United States, 462 F.2d 1036, 1038 (5th Cir.1972), cert. denied, 410 U.S. 928, 93 S.Ct. 1361, 35 L.Ed.2d 589 (1973) ("sue and be sued" clause conferred district court jurisdiction for claims against SBA for money damages). In S.S. Silverblatt, Inc. v. East Harlem Pilot Block, 608 F.2d 28 (2d Cir.1979), the court held that the "sue and be sued" clause waived immunity for recovery of money, based on a theory of "quantum meruit based on unjust enrichment", for work by a contractor on a housing project for which HUD had provided mortgage insurance. Id. at 36.
 
 
 38
 "Sue and be sued" clauses in an agency's enabling legislation are correctly viewed as coextensive with the statutory assignment of the agency, absent a specific restriction to the contrary. As was remarked in Beneficial Finance Co. of New York, Inc. v. Dallas, 571 F.2d 125, 128 (2d Cir.1978), "[i]f Congress intended a more narrow waiver of USPS immunity, it could easily have drafted the clause accordingly" (regarding Postal Service "sue and be sued" clause, 39 U.S.C. Sec. 401(1)). Far West's Count IV is of a pattern with those claims where a statutory "sue and be sued" clause was held to waive immunity and grant subject matter jurisdiction.
 
 
 39
 We conclude that Far West's claim for rescission and restitution may be brought in the district court under the "sue and be sued" clause.
 
 B. Source of Funds
 FIRREA provides that:
 
 40
 Any judgment resulting from a proceeding to which the Federal Savings and Loan Insurance Corporation was a party prior to its dissolution or which is initiated against the Corporation or with respect to the Federal Savings and Loan Insurance Corporation or with respect to the FSLIC Resolution Fund shall be limited to the assets of the FSLIC Resolution Fund.
 
 
 41
 12 U.S.C. Sec. 1821a(d).
 
 
 42
 In general, in an action against a governmental corporation only those funds "which are in its possession, severed from Treasury funds and Treasury control, are subject to execution." Burr, 309 U.S. at 250, 60 S.Ct. at 493. Recovery under "sue and be sued" and "subject to suit" clauses is thus limited to funds within the possession and control of the agency, as illustrated in cases cited supra. When such funds have not been shown to exist, some courts have held that the jurisdictional basis for suit in the district court has not been met. E.g., Marcus Garvey Square, 595 F.2d at 1131. Other courts, such as in C.H. Sanders Co. v. BHAP Housing Dev. Fund Co., 903 F.2d 114, 120 (2d Cir.1990), have held that when sovereign immunity is waived by a "sue and be sued" clause, the court need not analyze the funds within the Secretary's control that are used to satisfy the judgment. We need not choose between these potentially divergent paths, for in this case Far West has identified funds in the control of the FDIC, specifically the FSLIC Resolution Fund.
 
 
 43
 The government's position is that any monetary recovery by Far West on its theory of unjust enrichment of the FSLIC Resolution Fund, would be paid from the general funds of the United States, and thus that a claim for such recovery can be asserted only in the Claims Court under the Tucker Act. The basis for this argument is the statutory "Treasury backup" of the FSLIC Resolution Fund:
 
 
 44
 If the funds described in subsections (a) and (b) of this section are insufficient to satisfy the liabilities of the FSLIC Resolution Fund, the Secretary of the Treasury shall pay to the Fund such amounts as may be necessary, as determined by the [Federal Deposit Insurance] Corporation and the Secretary, for FSLIC Resolution Fund purposes.
 
 
 45
 12 U.S.C. Sec. 1821a(c)(1). The government's position is that since some of the money in the FSLIC Resolution Fund is provided by the Treasury as needed, the source is really the general funds of the United States. This is not a correct interpretation. FIRREA provides that the liabilities of the FSLIC Resolution Fund shall be paid from that Fund, and that the Fund is to be administered by the FDIC, not by the Treasury.
 
 
 46
 Legislative recognition that additional money may have to be provided to the Resolution Fund does not insulate that Fund from liability, or restrict the waiver implemented by the "sue and be sued" clause. To the contrary, the Treasury backup implements congressional intent that the FDIC shall have funds to carry out its obligations in accordance with FIRREA. Other sources of funds within the FSLIC Resolution Fund are the former assets of the FSLIC, supplemented from a variety of sources including (with qualifications) the income earned on Fund assets, liquidating dividends and payments from receiverships, amounts borrowed from the Financing Corporation, and assessments on Savings Association Insurance Fund members. 12 U.S.C. Sec. 1821a(b). That some of the moneys within the FDIC's control are received from the Treasury does not convert this suit into a suit against the United States, or limit jurisdiction to the Claims Court.
 
 
 47
 We conclude that the existence of the "Treasury backup" does not bar the grant of monetary relief by the district court pursuant to the "sue and be sued" clause, or impose exclusive Tucker Act jurisdiction.
 
 C. The "Subject to Suit" Clause
 
 48
 FIRREA also carried forward the suability provision that previously applied to the Federal Home Loan Bank Board. The Director of the Office of Thrift Supervision is designated as "subject to suit", other than on claims for money damages, in the judicial district in which the thrift institution is located or in the District of Columbia:
 
 
 49
 Except as otherwise provided, the Director shall be subject to suit (other than suits on claims for money damages) by any Federal savings association or director or officer thereof with respect to any matter under this section or any other applicable law, or regulation thereunder, in the United States district court for the judicial district in which the savings association's home office is located, or in the United States District Court for the District of Columbia....
 
 
 50
 12 U.S.C. Sec. 1464(d)(1)(A). We thus consider whether the statutory exception for "suits on claims for money damages" excludes Count IV from the jurisdiction of the district court, at least with respect to the OTS.
 
 
 51
 The government states that this "subject to suit" clause is a narrower waiver than a "sue and be sued" clause, and argues that the claims by Far West against the OTS require different jurisdictional treatment from the claims against the FDIC, with respect to Count IV. Far West responds that Count IV is not a claim for "money damages"; that it seeks no monetary relief from the OTS; and that any recovery would come from the FSLIC Resolution Fund based on unjust enrichment of that fund by abrogation of the Conversion Agreement. Whatever the merits of these arguments, they reinforce our view that severance of this issue and this defendant from the other counts and parties before the district court would add significant encumbrance to the litigation process. Resolution of this dispute will not be facilitated by splitting issues or parties. This aspect must be considered in ascertaining the intent of Congress in enacting the FIRREA suability clauses, in light of the government's position that the Tucker Act requires separate litigation of Count IV.
 
 
 52
 To assign to different courts the determination of various aspects of the same complex transaction; to redevelop the identical facts in order to permit two separate trial courts and two independent appellate avenues to consider alternative theories of relief; should not be imposed unless clearly required by statute. In today's climate of burgeoning litigation and strained resources, duplication of litigation serves no congressional purpose; it squanders judicial, governmental, and private resources.
 
 
 53
 Judicial concern about duplicative litigation due to jurisdictional conflicts is illustrated in several recent decisions. In United States v. Hohri, 482 U.S. 64, 107 S.Ct. 2246, 96 L.Ed.2d 51 (1987) the Court, dealing with the path of appeal of a district court decision whose claims involved both the "Little" Tucker Act and the Federal Tort Claims Act, noted that "a bifurcated appeal of the different legal claims raised in any one case would result in an inefficient commitment of the limited resources of the federal appellate courts". Id. at 69 n. 3, 107 S.Ct. at 2250 n. 3. In Williams v. Department of the Army, 715 F.2d 1485 (Fed.Cir.1983) this court observed that "Congress did not direct or contemplate bifurcated review of any mixed case" and held that cases that raised discrimination claims before the Merit Systems Protection Board were not to be bifurcated on appeal, although this deprived the Federal Circuit of appellate jurisdiction. Id. at 1490, 1491. Similarly, in Atari, Inc. v. JS & A Group, Inc., 747 F.2d 1422 (Fed.Cir.1984) (en banc ) this court rejected the bifurcation of appeals of cases arising in part under the patent law, citing congressional intent that there be "one, non-bifurcated appeal process to one court". Id. at 1440.
 
 
 54
 The traditional principles of pendent jurisdiction, and the procedural rules facilitating consolidation of suits and claims and defenses, all implement the strong policy disfavoring multiplication of litigation. Morrow v. District of Columbia, 417 F.2d 728, 738 & n. 38 (D.C.Cir.1969) (noting the policy behind pendent and ancillary jurisdiction of "having one single expeditious resolution of a dispute"). See Hagans v. Lavine, 415 U.S. 528, 548 & n. 14, 94 S.Ct. 1372, 1385 & n. 14, 39 L.Ed.2d 577 (1974) (recognizing "the special capability of federal courts to adjudicate pendent federal claims"); Mine Workers v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966) ("the claims [state and federal] must derive from a common nucleus of operative fact").
 
 
 55
 Applying this policy to the proposed bifurcation of the trial and appeal of issues in the present case, we hearken to the "admonition that waiver of sovereign immunity is accomplished not by 'a ritualistic formula'; rather intent to waive immunity and the scope of such a waiver can only be ascertained by reference to underlying congressional policy". Franchise Tax Board v. United States Postal Service, 467 U.S. 512, 521, 104 S.Ct. 2549, 2554, 81 L.Ed.2d 446 (1984) (quoting Keifer & Keifer v. Reconstruction Finance Corp., 306 U.S. 381, 389, 59 S.Ct. 516, 517, 83 L.Ed. 784 (1939)). This policy requires viewing the FIRREA suability clauses in light of the congressional abhorrence of unnecessary burdens upon courts and litigants. One court, hearing all aspects including Count IV, is in a better position to reach the correct result on the entire matter. Justice, as well as efficiency, is more likely to be served.
 
 
 56
 We conclude that immunity from suit in the district court, as to Count IV, has been waived with respect to the OTS.
 
 D. Other Points
 
 57
 We have considered the large number of additional arguments offered by the government. For example, the government argues that because the Conversion Agreement is with the FHLBB and not the FSLIC, the FDIC has no authority to satisfy any liability out of the FSLIC Resolution Fund, thus arguing that the district court has no jurisdiction over any claim that might be satisfied from the Fund. The answer to this question is contained in the FIRREA. At the time the parties entered into the Conversion Agreement the FSLIC was controlled by the FHLBB, and the FIRREA provides that the FHLBB is succeeded by the FDIC, including authority over the FSLIC Resolution Fund.
 
 
 58
 The government also argues that only the Claims Court can provide the relief requested in Count IV because Far West's claim is not really against the FDIC and the OTS, but against Congress and/or the United States. The government cites Dugan v. Rank, 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963), a case in which there was apparently no statutory waiver of immunity from suit against the agency. Dugan v. Rank does not contradict the extensive body of law and precedent implementing statutory waivers such as those enacted in the FIRREA. See generally 14 C. Wright, A. Miller, & E. Cooper, Federal Practice & Procedure Sec. 3655, pp. 215-16 & n. 15 (2d ed. 1985) (compilation of cases illustrating suit authorized by "sue and be sued" clauses).
 
 
 59
 The government states that some of the plaintiffs are not officers and directors of the Far West Savings Bank, may not have commonality of interest, and may not meet the terms of the "subject to suit" clause. The government argues that this reason alone requires severance into the Claims Court of trial of the issues affecting these persons. We do not think that the district court is barred from sorting out any conflicting interests, should that become necessary (it does not appear to be at issue), for the district court has personal jurisdiction over all the plaintiffs.
 
 
 60
 The parties also debated whether Section 702 of the Administrative Procedure Act provides an independent waiver of immunity in the district court. The issue was briefed at length, the government taking the position that under the Administrative Procedure Act Far West could litigate in the district court its obligation to comply with the capital and accounting requirements legislated by FIRREA, but only to the extent that Far West avoids reliance on the contract with the FHLBB and avoids demanding a remedy that includes monetary recompense. Far West states that this limitation is contravened by Bowen v. Massachusetts, 487 U.S. 879, 910 n. 48, 108 S.Ct. 2722, 2740 n. 48, 101 L.Ed.2d 749 (1988), wherein the Court explained that Congress did not assign to the Claims Court the exclusive jurisdiction over all monetary claims for more than $10,000, whatever the basis for such claims. We need not decide this question, in view of our ruling that the waiver of immunity in the "sue and be sued" and "subject to suit" clauses suffices to encompass the subject matter of Count IV.
 
 
 61
 Nor need we decide whether recovery might also be had in the Claims Court on Count IV, for such possibility does not defeat the jurisdiction of the district court under the statutory suability clauses.
 
 CONCLUSION
 
 62
 For the reasons discussed, the decision of the district court, refusing to sever and transfer Count IV, is affirmed. The stay is lifted.
 
 COSTS
 
 63
 Costs in favor of Far West.
 
 
 64
 AFFIRMED.
 
 
 
 [1]
 In accordance with 28 U.S.C. Sec. 1292(d)(4)(A), all appeals of the grant or denial of a motion to transfer an action to the Claims Court are assigned to the Federal Circuit
 
 
 [2]
 The plaintiffs are the Far West Federal Bank and others who are described as "owners, officers, and directors" of Far West. All will be grouped as "Far West" unless otherwise stated. The appellants OTS and FDIC may be collectively called "the government" in this discussion